RECEIVED
IN LAKE CHARLES, LA

JAN -9 2013

TONY R. MOORE, CLERK
BY_____
        DEPUTY

UNITED STATES OF AMERICA
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ANTONIO SEGUNDO OLIVEROS** | : | **CIVIL ACTION NO.: 2:12-cv-01278** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **UNITED STATES OF AMERICA** | : | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the court is a Motion to Dismiss under Rule 12(b)(1) filed by the defendant, the United States of America [Doc. 10]. The plaintiff, Antonio Segundo Oliveros, filed a response [Doc. 12] and the United States filed a reply [Doc. 14]. For the reasons stated herein, the United States' motion will be GRANTED.

### BACKGROUND

In this lawsuit, the plaintiff alleges that the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("DHS/ICE") breached the "confidentiality clause contained in regulation 8 C.F.R. 1208.6(b) by disclosing the fact that [he] had applied for asylum/withholding of removal to the government of Venezuela, endangering [his] life should [he] be] returned there."[1] He seeks relief from this violation through the Federal Tort Claims Act.[2]

The history of Mr. Oliveros' journey through the court system is extensive. Briefly, Mr. Oliveros, a citizen of Venezuela, was admitted to the United States on a temporary visa in 2002 set to expire in 2003.[3] He applied for asylum in 2004 and was denied, but nevertheless remained in the United States after his visa expired.[4] In 2007, he was deported to Venezuela, where he alleges

---

1 Pl.'s Compl. [Doc. 1-2] at pg. 3.

2 Pl.'s Compl. [Doc. 1], at pg. 1.

3 [Doc. 1-2] at pg 3.

4 *Id.*

Venezuelan officials persecuted him after they found out he had tried to seek asylum in America.[5] In 2007, he again reentered the United States illegally, and was later indicted and pled guilty to three criminal offenses related to his illegal reentry.[6]

On November 16, 2010, his prior order of removal was reinstated, and Detention and Removal Officer Roberts ("Roberts") submitted a request to the Venezuelan Consulate in New Orleans for travel documents to effect Oliveros' removal.[7] Mr. Oliveros then filed a flurry of lawsuits, including: (1) a challenge to his renewed removal order in the Eleventh Circuit which was dismissed as frivolous; (2) a Petition for Review in the Fifth Circuit seeking stay of removal, which was dismissed for lack of jurisdiction; (3) a Writ of Mandamus in this court, alleging that ICE had failed to give him a reasonable fear interview, which he withdrew after he received a reasonable fear interview; (4) a Writ of *Habeas Corpus* in this court, challenging ICE's removal order, which this court dismissed for lack of jurisdiction; (5) a Writ of *Habeas Corpus* in this court, claiming that his detention was indefinite and seeking release from immigration detention, which he withdrew after he was released from detention; (6) a Petition for Review and motion for stay in the Eleventh Circuit, which was dismissed for lack of jurisdiction; (7) a *Bivens* action in this court, alleging that his constitutional rights were violated when five DHS employees revealed to the Venezuelan Consulate in 2007, and then again on November 16, 2010, that he had applied for asylum, which he then voluntarily moved to dismiss and transfer to the Eastern District of Louisiana.[8]

---

5 *Id.* at pg. 4.

6 *Id., see also* Def.'s Mot. to Dismiss, [Doc. 10-1], at pg. 2.

7 *Id.*

8 *Id.* at pgs. 8-11.

In this action, his eighth lawsuit, Mr. Oliveros claims that while detained at the Federal Detention Center in Oakdale, he filed a *Habeas Corpus* petition to which the government responded with attachments from his immigration file.[9] Mr. Oliveros claims that, based on these documents, he discovered that on November 16, 2010, deportation officer Roberts ("Roberts") had submitted a travel document request to the Venezuelan Consulate.[10] This travel document request included a copy of his removal order which noted his asylum and withholding applications had been denied.[11] Mr. Oliveros argues that this disclosure to the Venezuelan Consulate by Roberts violated 8 C.F.R. § 1208.6(b).[12] He also asserts that such disclosure constitutes negligence.[13] Mr. Oliveros alleges that he is now stranded without a status in the United States and cannot return to Venezuela due to his disclosed asylum application, which would subject him to further persecution.[14] He presented an administrative tort claim which DHS denied on January 4, 2012, and then timely filed this FTCA action on May 17, 2012.[15] He seeks $500,000 in damages.[16]

The United States now moves to dismiss this action under Fed.R.Civ.P. 12(b)(1), arguing this court lacks subject matter jurisdiction. It asserts that the United States has not waived

---

[9] *Id.* at pg. 12.

[10] *Id.*

[11] *Id.*

[12] Pl.'s Compl., [Doc. 1] at pg. 2.

[13] *Id.*

[14] *Id.* at pg. 3.

[15] [Doc. 1-2] at pg. 2.

[16] [Doc. 1] at pg. 4.

sovereign immunity for Mr. Oliveros' Federal Tort Claims Act claim for a violation of 8 C.F.R. § 208.6.[17] The United States notes that, as per the requirements of waiver within the Federal Tort Claims Act, "[s]ince the alleged act or omission in this case occurred in Louisiana, the plaintiff's action must constitute a tort under Louisiana law for plaintiff to have a cognizable cause of action under the FTCA" and thus survive a motion to dismiss for lack of subject matter jurisdiction.[18] It asserts that Mr. Oliveros has failed to "set forth factual allegations or direct the Court to a duty owed to him by the United States under Louisiana tort law. Rather, he simply alleges that Roberts violated § 208.6."[19] Further, it argues that Mr. Oliveros cannot recover under his "pure negligence" theory because courts have refused to find a necessary state law duty (and thus find a waiver of sovereign immunity) merely because the law of the relevant state includes a general doctrine of negligence *per se*.[20] Finally, the United States argues that Mr. Oliveros fails to name "any state tort duty owed by the United States," and thus his reliance on La. C.C. art. 2315, which deals with the duty-risk analysis to determine whether an actionable tort has been committed, is misplaced.[21]

In Mr. Oliveros' response, he simply runs through the elements of La. C.C. art. 2315, arguing that he satisfies every requirement. First, he notes that Roberts had a duty to "protect information and/or documents that at least hinted at the fact that the plaintiff had applied for

---

17 Def.'s Mot. to Dismiss, [Doc. 10] at pg. 13.

18 *Id.* at pg. 15.

19 *Id.* at pg. 16.

20 *Id* at pg. 17.

21 *Id.* at pg. 18.

asylum."[22] Second, he notes that Roberts' conduct failed to conform to the appropriate standard, as Roberts could have easily redacted the "asylum portion of his order" so that Venezuelan officials could not see it.[23] Third, he notes that Roberts' conduct was the cause in fact of his injuries, since Roberts' actions have affected his ability to seek asylum in a third country.[24] Finally, Mr. Oliveros asserts that Roberts' conduct was the cause in fact of his injury, since, the second time a request to Venezuela for Mr. Oliveros' travel documents was made, the documents were denied, indicating that Venezuelan officials were retaliating against him for seeking asylum.[25]

In the United States' reply, they argue that Mr. Oliveros' response does nothing more than reiterate his non-meritorious reliance on La C.C. Art. 2315, and also fails to demonstrate that a state tort duty exists for recovery under Louisiana law.[26]

### LEGAL STANDARD FOR MOTION TO DISMISS UNDER RULE 12(B)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the court. FED. R. CIV. P. 12(b)(1). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be raised at any time, including before a responsive pleading is due. BAICKER-MCKEE ET AL. FEDERAL CIVIL RULES HANDBOOK 354, 359 (2008). The court may dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts

---

22 Pl.'s Opp. to Mot. to Dismiss, [Doc. 12], at pg. 2.

23 *Id.*

24 *Id.* at pg. 3.

25 *Id.*

26 Def.'s Reply to Resp. to Mot. to Dismiss [Doc. 14].

5

evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995)).

## ANALYSIS

### A. Violation of 8 C.F.R. § 208.6

Mr. Oliveros' FTCA claim arises out of an alleged violation of 8 C.F.R. § 208.6. Section 208.6 provides in pertinent part:

> (a) Information contained in or pertaining to any asylum application, records pertaining to any credible fear determination conducted pursuant to § 208.30, and records pertaining to any reasonable fear determination conducted pursuant to § 208.31, shall not be disclosed without the written consent of the applicant, except as permitted by this section or at the discretion of the Attorney General.
>
> (b) The confidentiality of other records kept by the Service and Executive Office for Immigration Review that indicate that a specific alien has applied for asylum, received a credible fear or reasonable fear interview, or received a credible fear or reasonable fear review shall also be protected from disclosure. . .

### B. Sovereign Immunity/Federal Tort Claims Act

In *Johnson v. Sawyer*, 47 F.3d 716 (5th Cir. 1995), the Fifth Circuit explained waiver of sovereign immunity under the FTCA as follows:

> The FTCA, subject to several exceptions, waives the sovereign immunity of the United States, making it liable in tort "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, for certain damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission*

6

*occurred.*" 28 U.S.C. § 1346(b) (emphasis added). While as a matter of abstract linguistics the phrase "law of the place where the act or omission occurred" might be thought to include generally applicable federal law, it has long been settled that it does not, and that "the liability of the United States under the Act [FTCA] arises only when the law of the state would impose it." *Brown v. United States,* 653 F.2d 196, 201 (5th Cir.1981). Thus, even a violation of the United States Constitution, actionable under *Bivens,* is not within the FTCA unless the complained of conduct is actionable under the local law of the state where it occurred. *Brown* at 201.

It follows, of course, and has consistently been held, that "the FTCA was not intended to redress breaches of federal statutory duties." *Sellfors v. United States,* 697 F.2d 1362, 1365 (11th Cir.1983). As the Second Circuit said in *Chen v. United States,* 854 F.2d 622, 626 (2d Cir.1988):

> "The FTCA's 'law of the place' requirement is not satisfied by direct violations of the Federal Constitution, *see Contemporary Mission, Inc. v. U.S.P.S.,* 648 F.2d 97, 104-05 n. 2 (2d Cir.1981); *Birnbaum v. United States,* 588 F.2d 319, 328 (2d Cir.1978), or of federal statutes or regulations standing alone, *Cecile Indus., Inc. v. United States,* 793 F.2d 97, 100 (3d Cir.1986); *Art Metal-U.S.A., Inc. v. United States,* 753 F.2d 1151, 1157-58 (D.C.Cir.1985); *Birnbaum,* 588 F.2d at 328; *Nichols [v. Block],* 656 F.Supp. [1436] at 1444-45 [ (D.Mont.1987) ]. The alleged federal violations also must constitute violations of duties 'analogous to those imposed under local law.' *Cecile Indus.,* 793 F.2d at 100 (quoting *Art Metal,* 753 F.2d at 1158.)"

*See also, e.g., Zabala Clemente v. United States,* 567 F.2d 1140, 1149 (1st Cir.1977) ("... even where specific behavior of federal employees is required by federal statute, liability to the beneficiaries of that statute may not be founded on the Federal Tort Claims Act if state law recognizes no comparable private liability"); *Gelley v. Astra Pharmaceutical Products, Inc.,* 610 F.2d 558, 562 (8th Cir.1979) ("... federally imposed obligations, whether general or specific, are irrelevant to our inquiry under the FTCA, unless state law imposes a similar obligation upon private persons").

We have long followed this rule. *United States v. Smith,* 324 F.2d 622, 624-25 (5th Cir.1963) (the FTCA "simply cannot apply where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs" and is unavailable where "[t]he existence or nonexistence of the claim" "depends entirely upon Federal statutes"); *Brown; Tindall v. United States,* 901 F.2d 53, 56 at n. 8 (5th Cir.1990) ("a federal regulation cannot establish a duty owed to the plaintiff under state law," citing *Smith* ). *See also Bosco v. U.S. Army Corps of Engineers,* 611 F.Supp. 449, 454

(N.D.Tex.1985).

*Id.* at 727-28.

The reasoning in *Johnson v. Sawyer*, cited by the defendant, is directly relevant to the court's inquiry in this case. In *Johnson*, a taxpayer brought an FTCA action for alleged wrongful disclosure of federal income tax information by IRS employees. *Id.* at 718. As in this case, the plaintiff claimed that the wrongful disclosure violated a specific statute prohibiting such disclosure and also constituted negligence by the IRS employees for recovery under the FTCA. *Id.* In finding for the United States, the Fifth Circuit held that "the violation of a federal statute or regulation does not give rise to FTCA liability unless the relationship between the offending federal employee [a]nd the injured party is such that the former, if a private person or entity, would owe a duty under state law to the latter in a nonfederal context." *Id.* at 727-28. The Fifth Circuit found that there was no such analogous duty under the relevant state law of Texas. *See id.*

Here, as in *Johnson*, Mr. Oliveros does not list in his petition, or anywhere else, a duty owed to him by the United States under Louisiana tort law, instead simply alleging that Roberts violated § 208.6. Even if Roberts did violate this regulation or any other federal regulation or statute, without more, Mr. Oliveros fails to raise an issue supporting the Government's liability under the FTCA.

### C. Negligence

Mr. Oliveros states in his petition that Roberts' actions constitute negligence. The *Johnson* decision also guides the undersigned's reasoning on this issue. Courts will not find a necessary state law duty merely because the law of the relevant state included a general doctrine of negligence *per se*. *Johnson*, 47 F.3d at 728-29. The Fifth Circuit has observed that where a

8

claim is based solely on the violation of a federal statute or regulation, allowing recovery under the FTCA under the general state doctrine of negligence *per se* would discriminate against the United States, since a private person would not be subject to such liability. *Id.* at 729. The FTCA simply does not go that far. *Id.* Thus, Mr. Oliveros' bare claims that the United States was negligent are not actionable under the FTCA.

### D. Louisiana Civil Code Article 2315

Finally, the undersigned addresses Mr. Oliveros' application of Louisiana's duty-risk analysis to his claims under the framework of La.C.C. Art. 2315 which provides, in relevant part, "Every act whatever of man that cause damage to another obliges him by whose fault it happened to repair it."

Plaintiff's reference to Article 2315 fails to satisfy the requirement that a state tort duty exists for recovery under the FTCA. Louisiana uses the duty-risk analysis to determine whether to impose liability under Article 2315. This analysis comprises five elements: (1) defendant had a duty to conform his conduct to a specific standard (duty); (2) defendant's conduct failed to conform to the appropriate standard (breach); (3) defendant's conduct was a cause in fact of plaintiff's injuries (cause-in fact); (4) defendant's conduct was a legal cause of plaintiff's injuries (scope of liability); and (5) actual damages sustained by plaintiff (damages). *Lemann v. Essen Lane Daiquiris, Inc.,* 05-1095 (La. 2006), 923 So.2d 627.

Mr. Oliveros cannot satisfy the threshold requirement of Article 2315: that a duty existed under Louisiana law not to disclose his confidential information to Venezuelan officials. For the reasons expressed *supra*, it is insufficient that a federal regulation alone, with no state law

9

counterpart, prohibits disclosure of confidential information in an immigration case. Thus, his claims under La. C.C. Art. 2315 fail.

## CONCLUSION

For the reasons stated herein, the United State's Motion to Dismiss for Lack of Subject Matter Jurisdiction will be granted, and Mr. Oliveros' claims will be dismissed with prejudice.

Lake Charles, Louisiana, this \_\_\_7\_\_\_ day of January, 2013.

                                            PATRICIA MINALDI
                                            UNITED STATES DISTRICT JUDGE